548

In re WILSON.

Patent Appeal No. 5039.

Court of Customs and Patent Appeals.
June 25, 1945.

Ely & Frye, of Akron, Ohio (Albert L. Ely and Bernard C. Frye, both of Akron, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D.C. (R. F. Whitehead, of Washington, D.C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner finally rejecting all the claims, numbered 3, 5, 11, 20, 21, 22, 23, and 24, embraced in appellant's application (serial No. 348,216) for a patent on a "Sectional Airbag and Method of Manufacturing Same."

Claims 3, 5, 20, 21, and 24 are for the article and claims 11, 22, and 23 for the method of making it.

The airbags in question are for use in the vulcanization of repair parts added to pneumatic vehicle tires, such, for example, as tires of automobiles. They are relatively small, arcuate shaped fluid containers. The use of such articles is described in the brief on behalf of appellant as follows:

"Assuming a tire is worth repairing, the worn-out portion is prepared to receive new unvulcanized or only partially vulcanized rubber which must be united with the rubber in the rest of the tire. A section of new rubber of the desired size is held in place and confined by mechanical mold equipment arranged over the outside of the tire casing, while a sectional airbag is placed inside the tire casing directly under the new rubber. Fluid under pressure, usually air, enters the airbag and forms a backing surface under the new rubber, so that when vulcanizing heat is applied to the new rubber, this rubber is firmly held against the tire casing of which it is to become a part. Temperatures in the neighborhood of 300°F are used in this vulcanizing process and as a result of this heat, plus the pressure in the airbag which is evenly distributed over the portion of the inside of the tire casing which it engages, the new rubber becomes united or vulcanized to the old rubber in the tire. Pressure which is exerted by the airbag from inside the tire casing also prevents the new rubber from becoming porous during vulcanization."

Claims 3 and 22 are regarded as illustrative. They read:

"3. A sectional airbag comprising a hollow arcuate rubber core, a rubber sheet having spaced parallel reinforcing wires therein enclosing said rubber core with said wires extending at an acute angle to the axis thereof, a second wire reinforced rubber sheet positioned around said first rubber sheet, the wires in said second sheet being oppositely inclined relative to the wires in said first rubber sheet in relation to the longitudinal axis of said rubber core, said wires in both said rubber sheet extending the full length of said core and lapping over the ends thereof reinforcing means associated with the ends of said rubber core, and rubber means extending around the major portion of said covered rubber core to form an outer covering therefor."

"22. The method of making a sectional airbag comprising forming of an impervious material an elongated hollow core having closed ends with at least one of said ends having an opening formed therethrough in the form of a hollow stem, molding said core to approximately the same shape it will occupy when it is used in service, incorporating a pluarlity of longitudinally extending parallel strain bearing wires in a rubber cover sheet, said

wires being widely spaced relative to their diameter, covering said core with at least one layer of said sheet with said wires extending the full length of and substantially parallel with the longitudinal axis of said core intermediate the ends thereof, overlapping said ends with said cover with said wires converging at the central region of the ends, and vulcanizing the assembled parts in a sectional airbag mold whereby a finished bag is produced."

It will be observed that appellant's reinforcing element for the rubber sheets used in the construction consists of wires, and there are certain limitations in other of the claims, relating to the spacing of the wires, which appellant emphasized in his argument before us. In claim 20 it is recited that the wires are parallel and "widely spaced relative to their width." In claims 21, 22, and 23 it is said that they are "widely spaced relative to their diameter." In claim 24 (added for appeal) it is stated that they are "spaced a distance equal to at least twice the width of said wires." Claim 5 refers to the wires as being "partially spiralled" around the core. Claim 11 (a method claim) recites "completely covering the arcuate section with a wire reinforced rubber sheet."

The Examiner rejected all the claims in view of cited prior art, and additionally rejected claim 24 as not being supported by the disclosure of the application. The Board followed the views of the Examiner as to the effect of the prior art, but made no reference to the matter of lack of disclosure of claim 24, other than to say in regard to the spacing defined, "We find nothing in the specification indicating this as critical or as producing any new or unexpected result."

The references are two patents, viz.: Burdette, 1,549,962, August 18, 1925; Semler, 1,981,201, November 20, 1934.

It is thought that appellant's device may be fairly vizualized from the quoted claims, but the following general description given in the brief of the Solicitor for the Patent Office is helpful: "As shown in the drawings of the application, the airbag is formed by placing around a rubber core of the desired shape, a rubber sheet reinforced with wires, then placing thereon a second sheet reinforced with wires which will be at an angle to those of the first sheet and lastly a covering of rubber, and vulcanizing these parts. The covering layers are put in such a position as to reinforce the bag in a longitudinal direction, the bag being capable of expanding in a transverse direction, as shown in the drawings of the application."

The Burdette patent discloses a bag used for the same purpose as that of appellant. In contour and dimensionally it is substantially the same as that of appellant, and the materials entering into its composition are the same except for the elements used in reinforcing the rubber sheets. In Burdette those elements apparently consist of cord fabric (presumably cotton or the like), although a number of the claims are not limited as to the material of which such elements are composed. In all the claims here at issue, as has been stated, the reinforcing element consists of wire.

There is, however, a difference between the arrangement of the reinforcing elements in the Burdette patent and that defined by appellant. In the patent apparently all the reinforcing cords extend longitudinally across the entire surface and around the ends of the bags, while in appellant's device the wires are arranged at an angle to the central line of the core.

The Semler patent discloses a bag having a metal core. A sleeve is mounted on the core, the sleeve having inner and outer portions which constitute an expansible chamber. The outer portion of the sleeve is reinforced by longitudinally extending cords and adjacent the ends only oppositely inclined cords are placed at substantially the same angle as are the wires of appellant. The specification of the patent states that in place of cords or strings, "chains, small flexible metal strips or the like may be employed as reinforcing material." It is also stated in the specification: "A further object of my invention is to reinforce and seal the ends of a sleeve of a curing bag with reinforcing material in such manner that the material, in spite of its sealing and strengthening function, will permit the entire sleeve to expand radially under pressure to fit the tire within which it may be placed."

The holding of the Examiner is summarized in the brief of the Solicitor for the Patent Office as follows: "The examiner based his rejection of the claims on the theory that in view of the statement above quoted from the Semler patent as to the chains, flexible metal strips, etc. for a reinforcing material in an airbag, there was no invention in using metal strips or wires as reinforcements in place of the

cords used in the bag of the Burdette patent and no further invention in placing the reinforcements at an angle to the longitudinal axis of the Burdette bag, as shown in the Semler device."

While the Board seems to have regarded the issue, under the manner in which the case was presented before it, as being limited to the question of whether it constituted invention to substitute wire reinforcements for cord reinforcements and held that it did not, particularly in view of Semler's teaching that "chains, small flexible metal strips or the like" might be used, there seems to be, as the case is presented before us, another issue, viz.: Did it constitute invention to arrange the reinforcing cords, at the angle described, over the entire surface and at the ends of the bag in view of Semler's showing of such arrangement at the ends only?

Careful consideration has been given to appellant's arguments upon both points. It is thought probable that appellant's device may be an improvement over the prior art devices, but not all improvement involves invention, and it does not seem to us that it may be held that appellant's arrangement involved the exercise of the inventive faculties. We also agree that it did not involve invention to substitute flexible metal wires for the cords shown in the patents, particularly in view of Semler's teaching as above recited.

With respect to the limitations relating to the spacing of the wires, we fail to find any teaching of criticalness. The reinforcing elements of necessity have to be spaced apart to some extent, whether composed of cord or of wire. The partial spiralling of the wires around the cord, as defined in claim 5, is not particularly stressed by appellant. Nothing is shown which would justify our holding that this limitation renders that claim patentable.

We agree also that in the absence of invention in the article there is nothing patentable in the method claims—indeed, it might be questioned whether those claims would be allowable even if the article claims were allowed, since they teach nothing other than the conventional manner of producing the bag.

In view of our conclusion, no further discussion of claim 24 is deemed to be necessary.

The decision of the Board is affirmed.

Affirmed.