42 C.C.P.A.(Patents)

**Application of DEMARCHE.**

**Patent Appeal No. 6084.**

United States Court of Customs
and Patent Appeals.

Feb. 21, 1955.

Rudolph S. Bley, Elizabethton, Tenn. (Benjamin J. Chromy, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable claims 9 through 15 and 17, the only remaining claims in appellant's application for a patent on a "Positive Stop Device for Winding Machines."

The appealed claims relate to a conventional thread winding machine which incorporates an improved stopping lever which causes faster stopping of the machine on breakage of the thread. The conventional thread winding machine, which has been modified, consists broadly of a tensioning device through which the thread passes from a supply source, a rotating spindle on to which the tensioned thread is wound after passing through a thread traversing and guiding device, and a stopping lever which is activated by loss in tension or breakage of the thread to stop the winding machine. Appellant's stopping lever replaces the stopping lever of the conventional machine. This improved lever is pivoted to a portion of the machine, and has three arms mounted thereon in fixed relationship to each other. The relationship between these three arms and the remainder of the machine is as follows: Two of the arms of the stopping lever engage the portion of the thread which extends between the tensioning device and the thread traversing and guiding device. The first of these arms is supported on the thread being wound, and

the second arm (referred to as a tensioning arm) supports the thread being wound. When the tension of the thread decreases, or when it breaks, the first and second arms will drop as a unit and cause the stopping lever to which they are affixed to pivot. Thus, the third arm, because of its fixed relationship to the other two arms, will also pivot and engage a cam which in turn causes a brake to stop the machine. It is to be noted at this point that the only difference between the stopping lever of a conventional thread winding machine and the subject matter recited in the appealed claims is the presence of the second of the above mentioned arms which is affixed to said stopping lever.

Claims 9, 15, and 17 are considered to be representative of those appealed, and read as follows:

"9. In a thread tension control stop member for winding machines of the type having a thread tension device, a thread guide remotely positioned therefrom, a power control device, a pivoted sector shaped latch for the power control device having a free end located between the tension device and the thread guide, a cam shaft a stepped release cam on the cam shaft and a pivoted lever system for actuating the power control device, the improvement comprising in combination a support for mounting the lever in rocking relation on the free end of the sector, a thread bar extending from said support toward the tension device for support on a thread running from the device to the thread guide, a trip leg extending from said support into proximity to the stepped release cam, whereby rocking movement of the lever will project the free end of said trip leg into contact with the cam, and a tension arm extending generally upwardly and outwardly from said support adapted to guide the thread in an angularly disposed path running from the tension device to the thread guide, said tension arm being adapted to render effective the movement of said trip leg into contact with said cam upon release of said thread bar by breakage of thread or loss of tension therein."

"15. In a winding machine of the type including a stop cam, a stop member adapted to be positioned in spaced relation to said cam and for movement into operative contact therewith, a thread supported member for positioning said stop member in spaced relation to said cam, the improvement comprising in combination therewith a thread supporting member to render effective the movement of said stop member into contact with said cam upon release of said thread supported member upon breakage of thread or loss of tension therein."

"17. In a thread winding machine wherein thread passes from a tension device to a traverse device and over an arm constituted as a thread bar of a pivoted multi-arm lever system adapted to actuate means for stopping operation of said machine upon breakage of the thread or failure of the supply thereof and wherein said stopping means includes a rotating cam against which another arm constituted as a trip leg of said lever system is moved upon breakage of the thread or failure of the supply thereof and by means of which cam it is lifted to initiate stopping of the machine, the improvement wherein said lever system comprises in combination a hub portion for pivoting said system on the machine, a thread bar carried by and extending outwardly from said hub and against which the thread issuing from the tension device normally bears, a trip leg carried by and extending outwardly from said hub in angular direction with respect to said thread bar and normally out of contact with the rotating cam of the machine, and an additional arm constituted as a thread tension arm carried by and

extending outwardly from said hub in a direction oppositely disposed with respect to said trip leg and at a point in the path of the thread passing from the thread bar to the traverse guide to impart sufficient additional tension to the entire lever system upon breakage of the thread to effect rapid pivoting of said lever system and movement of said trip leg into engagement with said rotating cam for actuating the stopping means."

The references relied on by the Patent Office are:

Cannon 1,595,705 Aug. 10, 1926
Spangler et al. 2,361,426 Oct. 31, 1944
Lebocey (France) 558,309 May 23, 1923

The Spangler et al. patent discloses a conventional thread winding machine, as described above. The only difference between this machine and the appealed claims is that it lacks the second arm (tensioning arm) which was described above as being affixed to the stopping lever. In the Spangler et al. machine, insofar as pertinent to the claims under consideration, the stopping lever consists of two arms which are affixed to a pivoted member. The first of these arms is supported on a portion of the thread which extends between a tensioning device and a thread traversing mechanism. If the thread breaks, or if the tension thereof decreases, the first arm will drop, thereby causing the stopping lever to pivot, which in turn causes the second arm to engage a cam which co-acts with other mechanism to stop the winding machine.

The Cannon patent discloses a stopping device for yarn winding machines which stops the machine when the tension of the yarn being wound exceeds a predetermined amount. The portion of this patent which is pertinent to the claims under consideration shows three arms fixedly mounted perpendicularly to the axis of a shaft which is spring biased in a predetermined position. Two of these arms have a roller affixed to their ends. The yarn passes under one of the rollers and over another of the rollers. When the tension in the yarn exceeds a predetermined amount, the arms are caused to move against the bias of the spring. This, in turn, causes rotation of the shaft to which the arms are affixed. The third of these arms is thereby also caused to move. This third arm is mechanically linked to braking mechanism which stops the machine under the foregoing described conditions of *increased* tension in the yarn. It is to be noted, however, that while the Cannon stopping mechanism stops the winding machine on *increase* in tension of the thread, appellant's stopping mechanism stops the winding machine on *decrease* in tension of the thread, or breakage thereof.

The Lebocey patent discloses a device for disengaging the spindles of winders. Two modifications are shown in the patent. The first modification shows a winding machine in which an arm is supported by a portion of the thread being wound, this portion extending between the supply reel and take-up reel. When the thread breaks (or when the tension thereof decreases), the arm drops and a linkage connected to the arm is moved to disengage the spindle of the machine. The second modification shows a system in which the machine is stopped when the tension in the thread exceeds a predetermined amount. The portion of this modification which is pertinent to the claims under consideration shows a stopping mechanism consisting in part of three arms pivoted to a common pivot point on the machine. Rollers are affixed to two of these arms. The thread passes under one roller and over another enroute from the supply reel to the take-up reel. As the tension in the portion of the thread which extends between the reels increases, at least one of the arms is caused to pivot which in turn causes the third of said arms to pivot. The third arm is mechanically linked to a latch which causes disengagement of the winding machine when the tension in the thread exceeds a predetermined amount and thereby

causes said third arm to move a predetermined distance.

The examiner rejected all of the claims on Spangler in view of either Cannon or Lebocey. The Board of Appeals affirmed the examiner's rejection. In so doing, the board in essence stated that but for the additional tension arm mounted on the hub of appellant's stop lever system, the positive stop device of appellant's winding machine is the same as that disclosed by the Spangler et al. patent. The board further stated that upon carefully comparing the results produced by Spangler et al. and appellant's device, the difference between the respective results is one of degree only. The board further stated that there is nothing new in taking advantage of a third arm in an armed lever system, as shown by the secondary references, for more effectively controlling stoppage of a mechanism, whether the lever system responds to an increase or decrease in tension of the thread. It is apparent from the record that the board was also of the opinion that the claims were unpatentable over Spangler et al., taken alone. The board stated that the additional tension arm of appellant's device merely served the purpose of providing an increased gravitational action to the Spangler et al. stopping lever, and that any one skilled in the art, finding the Spangler et al. stopping device sluggish, could modify the device so as to increase its unbalanced moment and thereby accelerate its stopping action, whether in the manner proposed by appellant or in any other way without a display of uncommon talent.

Thus the basic issue before this Court is whether the addition of the tension arm to the Spangler et al. mechanism for the purpose of stopping the machine more quickly in case of loss of tension of the thread or breakage thereof involves invention or mechanical skill.

Since the claims on appeal recite structure which is shown to be conventional in Spangler et al. except for the above mentioned additional tension arm, we do not deem it necessary to discuss this conventional structure further, and we will confine the remainder of this decision to the above mentioned issue and to the arguments made by appellant for patentability.

As stated above, the board relied on Spangler et al. alone to reject the claims. The board stated that the tension arm merely serves the purpose of providing increased gravitational action to the stopping lever of Spangler et al., and that any one skilled in the art, finding the Spangler et al. machine sluggish, could, without a display of uncommon talent, modify the Spangler et al. machine in the manner disclosed by appellant in order to improve its stopping action. However, appellant contends that the force which causes faster stopping of his machine is not the increased gravitational action, as stated by the board, but the proper balance of the friction and tension on the additional (tension) arm. These different contentions, relating to the theory of operation of appellant's stopping lever are, in our opinion, collateral to the basic issue of whether the improvement of the stopping lever involves invention or mechanical skill since, regardless of which theory of operation is correct, all that has been accomplished is that the existing stopping lever of a conventional machine has been made more sensitive to the thread which controls its operation.

There can be no doubt that appellant has made an improvement. However, an improvement does not necessarily involve invention. In re Wilson, 150 F.2d 548, 32 C.C.P.A., Patents, 1193. Improvements which are in the realm of mechanical skill do not justify patent protection. In re Jannell, 120 F.2d 1012, 28 C.C.P.A., Patents, 1262. Furthermore, it is not invention to produce a device which is within the realm of performance of a skilled mechanic in the ordinary progress of producing a device to effectuate a given result. In re Kauf-

mann, 193 F.2d 331, 39 C.C.P.A., Patents, 769.

■ We feel that we have a situation here which falls squarely within the foregoing principles, especially the one set forth in In re Kaufmann, supra. It appears to us, as it did to the Board of Appeals, that any one finding the operation of the Spangler et al. machine sluggish, could by the exercise of mechanical skill effectuate the given result of causing the stopping lever to operate more quickly by adding an additional arm and thus making it more sensitive. We must therefore sustain the rejection of the claims on Spangler et al.

Since the rejection on Spangler et al. must be sustained, there is ordinarily no need to consider the other rejections of the claims. In re Miller, 159 F.2d 756, 34 C.C.P.A., Patents, 910. However, we feel that such consideration is necessary in the present case since we do not fully agree with the rejection of the claims on Spangler et al. in view of Cannon or Lebocey. As stated above, we feel that the claims are unpatentable over the Spangler et al. patent. However, we feel that the use of Cannon and Lebocey with Spangler et al. adds nothing to the anticipatory value of Spangler et al. when used alone. The manner in which the references were combined is stated above. It can readily be seen from the descriptions that the three-armed stopping levers stop the winding machines of the secondary references only on *increase* in tension of the thread while the stopping lever of Spangler et al. stops the winding machine on a *decrease* in tension, or breakage, of the thread. Thus, there is a decided difference in operation between the machines of the secondary references as compared with the machine of the primary reference.

■ It is well settled that prior patents may be combined to anticipate claims. In re DeLancey, 177 F.2d 377, 37 C.C.P.A., Patents, 760. However, one limitation which should be considered when references are combined is whether these references suggest doing the thing which applicant has done. In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939. In the present case, we feel that the combination of references was not made in accordance with the principle of In re Fridolph, supra, which is controlling here, since there is no suggestion in any of the references which would indicate that the disclosures of the secondary references could modify Spangler et al. to give appellant's structure and result.

In our opinion, the modification of Spangler et al. as taught by the secondary references would result in a winding machine which would be caused to stop on *increased* tension of the thread, and not in a machine which would be caused to stop on *decrease* in tension of the thread, as disclosed by appellant. We feel that this is a case where the references were put together after appellant's teaching was known, and that the secondary references themselves would not have suggested the modification of the Spangler et al. machine to give the machine disclosed by appellant. We are of the opinion that since the teachings of the secondary references add nothing to the teaching of Spangler et al., that this combination of references is improper and cannot be sustained even though we have found the claims to be unpatentable over the disclosure of Spangler et al. when used by itself.

■ Appellant states in his brief that the plant where appellant is employed is now completely equipped with his improvement. This was apparently brought out for the purpose of indicating commercial success. However, this Court may not consider the aforesaid matter which appears in appellant's brief since it is not in the record. In re Spohn, 77 F.2d 768, 22 C.C.P.A., Patents, 1304.

Since we have found the claims to be unpatentable over Spangler et al., the decision appealed from is affirmed.

Affirmed.