Application of Frank M. VAN DEVENTER (Walworth Co., Assignee).

Patent Appeal No. 6085.

United States Court of Customs and Patent Appeals.

June 15, 1955.

William H. Webb, Washington, D. C., and Albert J. Henderson, Greensburg, Pa. (Donald A. Gardiner, Washington, D.C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 19 to 23, inclusive, of the appellant's application, Serial No. 25,002, for a patent on an improvement in plug valves,

on the ground of lack of invention over the prior art. Claim 19, which is illustrative of the appealed claims, reads:

"19. A plug valve assembly adapted for insertion between the ends of a pair of oppositely disposed tubular pipe sections comprising a valve casing having opposite end portions, one of said casing portions defining an inlet passage converging in one direction to a tapered valve seat from substantially the diameter of one of the pipe sections with which it is adapted to be associated, the other of said casing portions including an outlet passage extending in an opposite direction from the valve seat, a tapered plug valve member co-operable with said seat and having a port of substantially rectangular cross-section, said passages having at least the portions thereof adjacent the valve seat formed of substantially rectangular cross-section with which said plug port is adapted to register to form a supplemental connecting conduit in the open position of said valve member, and a tapered pipe section positioned at the outlet of said outlet passage and engaging at its smaller end with said other casing portion, said smaller end being generally rectangular cross-section forming a continuation of said outlet passage and diverging into substantially circular cross-section at its larger end, said tapered pipe section having an included angle in its major dimension of approximately ten degrees and being adapted to be connected at the larger end thereof to the other of the tubular pipe sections."

The references relied on are: de Ferranti (French), 422,829, January 30, 1911; Murray, 1,220,773, March 27, 1917; Borden, 1,522,490, January 13, 1925; Merco Nordstrom (British), 339,-889, December 18, 1930; Hamer, 2,421,-879, June 10, 1947; Hughes and Safford—"Textbook on Hydraulics," 1926, pp. 225 and 227.

The application is directed to a valve construction which is intended to be used in relatively large pipe lines. In such lines, the cost of the valves is a material item, and it is therefore desirable to employ valves which are considerably smaller in size than the pipe line itself. When that is done, however, there is normally an appreciable loss in pressure at each valve, which results in an increased cost of operation. It is an object of the applicant's invention to minimize the pressure drop, while at the same time employing valves of standard construction which are materially smaller in diameter than that of the pipe line.

Specifically, the application discloses a valve of the rotary plug type having a substantially rectangular passage therethrough, and mounted in a casing which has rectangular openings adjacent the valve and adapted to register with the opening in the plug when the valve is in open position. On the inlet side, the casing expands rather rapidly from the point adjacent the valve to a point at which it is joined to the inlet side of the pipe line, and the configuration of the casing also changes from rectangular to round, the diameter of the round portion being approximately equal to that of the pipe line. On the outlet side, the valve casing is generally rectangular in cross-section and expands in a lesser degree from the valve at an angle of approximately 10°. At the outlet end, the casing is joined to a tubular member which expands gradually from a generally rectangular cross-section equal to that of the casing outlet to a round cross-section equal to that of the pipe line, the angle of expansion being approximately 10°. With that arrangement, turbulence and losses due to friction are said to be very materially reduced.

The reference primarily relied on by the Patent Office tribunals in the rejection of claim 19 is the French patent to de Ferranti. That patent discloses a valve comprising a spherical plug mounted in a casing having passages which flare outwardly in each direction from a diameter equal to that of the passage

in the valve plug to the diameter of the pipe in which the valve is to be inserted. Those passages are circular in cross-section, and one is more sharply flared than the other. The specification of the patent is directed to the construction of the *valve itself* and *no specific statement is made as to the size or shape of the passages in the casing.* Although it was stated by the Patent Office that the angle at which the outlet passage is flared is approximately 10°, that conclusion must necessarily be based on the drawing alone. However, from our examination, the drawing indicates that the angle in question is in excess of 10° and more nearly approximates 15°.

The British patent to Merco Nordstrom was also relied on in the rejection of claim 19. It discloses a valve comprising a tapered plug having a substantially rectangular opening and mounted in a casing which includes rectangular openings adapted to register with the openings in the plug. From those registering portions, the casing is flared and changes its shape from rectangular to circular, so that it may be connected with the circular inlet and outlet pipes having a diameter somewhat greater than the longest dimension of the rectangular opening.

The patents to Murray, Borden, and Hamen were also relied on by the tribunals below as disclosing certain ancillary features, but, in view of our conclusion, it is not necessary to consider those patents in detail here.

Claim 19 is limited to a valve assembly comprising a plug having a rectangular passage and a casing having rectangular inlet and outlet passages registering with the plug opening. It further requires that the outlet passage shall have a taper of approximately 10°, and that both the inlet and outlet passages shall vary in shape from rectangular to circular cross-section.

That claim was rejected on a combination of the British and French patents, it having been held that no invention would be involved in modifying the taper of the outlet passage of the British patent to correspond with that required by claim 19 in view of the showing of the French patent; or, conversely, that invention would not be involved, in view of the British patent, in employing a valve plug with a rectangular opening in the French patent and modifying the outlet passages of the casing so that they vary from rectangular to circular conformation.

In our opinion those rejections would be more persuasive if the French patent contained any statement as to the taper of the outlet passage, or any indication that some particular degree of taper were desired. In the absence of such statements, the patent contains no more than an incidental showing in the drawing. It is quite true that an incidental, or even an accidental, showing may constitute an anticipation and, accordingly, if claim 19 were readable on the drawing of the French patent, it would be immaterial that the taper of the passage is not specifically described. In attempting to combine references, however, consideration must be given to what they *properly teach,* and we do not think that the specific taper which happens to be illustrated in the French patent could properly be transferred to the device of the British patent.

With respect to the suggestion that the valve plug of the British patent, with its rectangular opening, might be substituted for the spherical valve of the French patent, it is noted that the essence of the invention of the French patent appears to lie in the *particular valve used,* the inlet and outlet passages shown being, in our opinion, *purely incidental.* Under those circumstances, we do not feel that the idea of substituting an entirely new valve for that shown in the patent would be likely to occur to one skilled in the art. Moreover, it appears that the proposed substitution would involve a radical alteration in the shape of the valve casing, and it is by no means clear that the specific taper shown

in the French patent would be preserved during such changes, especially since the patent contains nothing to indicate that such shape is of any material consequence.

It is further noted that, as pointed out above, the taper of the outlet passage in the French patent appears to be approximately 15° as distinguished from the 10° recited in claim 19. That difference, in the absence of any specific description, materially lessens the value of the patent as a reference since an incidental disclosure in the drawing does not ordinarily suggest anything different from what is actually illustrated.

Claim 19 also requires that a portion of the tapered passage between the valve plug and the pipe line be provided by a connecting conduit supplemental to the valve casing. We do not find such a feature suggested by either the British or the French patent.

It is noted that the Patent Office also relied on the Hughes and Safford textbook. We are aware of the teachings contained therein; namely, that it is old to employ a gradual taper for the purpose of reducing friction losses; and the textbook specifically suggests that an angle of taper not greater than 15° may be desirable. However, in our opinion, that reference does not, either alone or in combination with the other references relied upon, suggest the specific structure defined in the appealed claims.

We are impressed by the affidavits of record showing that the particular construction disclosed and claimed by appellant is of considerable commercial value, and effects material and unexpected savings in both installation and operational costs.

As we view the record, the appellant has disclosed a unitary device constituting a material improvement over the prior art, and such device would not be fairly suggested to the skilled worker in the art by the combination of references relied on. We think claim 19 is fairly commensurate with the inventive concept disclosed and, accordingly, should have been allowed.

Since claims 20 to 23, inclusive, are dependent on claim 19 and include all the limitations thereof, it follows that those claims also are allowable.

The decision of the Board of Appeals is reversed.

Reversed.

JOHNSON, Judge.

I respectfully dissent from the conclusion reached by the majority and am of the opinion that the decision of the Board of Appeals, as set forth in Patent Appeal No. 6085 of this court, should be affirmed.