Rolland C. HIGLEY, Appellant,

v.

Edward J. BRENNER, Commissioner of
Patents, Appellee.

No. 20779.

United States Court of Appeals
District of Columbia Circuit.

Argued June 19, 1967.

Decided Nov. 7, 1967.

As Amended Dec. 13, 1967.

Petition for Rehearing Denied
Dec. 13, 1967.

Mr. S. Tom Morris, Amarillo, Tex., with whom Mr. Keith Misegades, Washington, D. C., was on the brief, for appellant.

Mr. Fred W. Sherling, Atty., U. S. Patent Office, with whom Mr. Joseph Schimmel, Sol., U. S. Patent Office, was on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and TAMM, Circuit Judges.

TAMM, Circuit Judge:

Appellant Higley sought a patent on a tractor-drawn frame or subsoil tiller—an oscillating groundworking implement which, by imparting a vibrating motion to the tools, not only can penetrate the soil to a depth of two and one half feet but can thereupon simultaneously shatter both hardpan and subsoil. The Patent Office rejected his application, and the Board of Appeals affirmed that rejection.[1] He then brought suit in the District Court below under 35 U.S.C. § 145 [2] to compel issuance of a patent. The District Court dismissed the suit, and the present appeal was taken.

The implement involved can be pulled behind an ordinary farm tractor. It consists of several earthworking tools suspended from a frame which is mounted on two wheels. An eccentric weight is, in turn, mounted on top of the frame. Rotation of the weight [3] imparts an oscillating motion to the frame, causing the earthworking tools on either side to move in and out of the ground vertically in an alternating fashion, while also causing them to move laterally.

The machine was specifically designed to cope with a soil condition known as "hardpan," a hard subsurface that forms six to eight inches beneath the soil's surface. Presence of the condition keeps much of the rainfall from being absorbed into the subsoil and causes it to run off. Previous implements used to penetrate the hardpan have either required too much power to pull, have made furrows while leaving the ground in between unbroken, or have not gone deep enough to break up the hardpan. Higley's "sub-tiller" has none of these disadvantages. It can be pulled by a farm tractor, it completely shatters the earth leaving no unbroken ground, and it breaks up the hardpan.

The Patent Office, the Board of Appeals, and the District Court relied (as the Commissioner does here) on a combination of four prior patents, which, it is contended, anticipate or in any event render obvious Higley's device.[4]

The Bird patent, oldest of the four, shows a static implement for deep subsoil tilling. It is similar in design to appellant's implement but without the oscillating mechanism. The Keller patent shows a power shovel with an oscillating movement applied to the shovel bucket.

---

1. Decision of the Board of Appeals, March 31, 1965.

2. An applicant dissatisfied with the decision of the Board of Appeals may, unless appeal has been taken to the United States Court of Customs and Patent Appeals, have remedy by civil action against the Commissioner in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints. The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Appeals, as the facts in the case may appear and such adjudication shall authorize the Commissioner to issue such patent on compliance with the requirements of law. All the expenses of the proceedings shall be paid by the applicant.

3. The power for the rotation is supplied by the tractor's power takeoff.

4. All claims were rejected as obvious under 35 U.S.C. § 103 (1964). Claim sixteen was also rejected as fully anticipated under 35 U.S.C. § 102 (1964) by either the Miselli or Saint-Seine patents. Because both the Miselli and Saint-Seine implements resemble ordinary plows, we feel that they do not teach the kind of *deep* soil disruption claimed on behalf of the appellant's device.

The Miselli and Saint-Seine patents [5] both show implements resembling ordinary plows but with relatively small oscillating mechanisms mounted directly on the plow shares  The contention of the Commissioner is that it would have been obvious to one ordinarily skilled in the art to combine the deep tilling capabilities of the Bird "static ripper" with the oscillating movement used in either the Miselli or the Keller devices and, accordingly, that Higley's implement is not patentable under 35 U.S.C. § 103.

We note at the outset that a presumption of correctness accompanies the decisions of the Patent Office.  California Research Corp. v. Ladd, 123 U.S. App.D.C. 60, 356 F.2d 813 (1966); Fletcher v. Watson, 92 U.S.App.D.C. 205, 204 F.2d 68 (1953), and substantially the same rule applies to the findings of fact of the District Court.[6]  What the prior art is and what the claimed invention is are questions of fact.  However, whether the standard of obviousness applied to those facts is correct, is a question of law.  Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

Three conditions, set out in 35 U.S.C. §§ 101–103,[7] must be met as prerequi-

5. While Bird is a United States patent, Saint-Seine is French, and Miselli and Keller are Italian.  The suggestion is made by appellant that the teachings of foreign patents are anticipatory only to the extent that they "clearly suggest" what the applicant did.  Whatever value there is in that vague distinction, we simply note here that under either standard Higley's application was not anticipated.

6. Rule 52(a) of the Federal Rules of Civil Procedure provides, *inter alia:* "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

7. § 101.  Inventions patentable
Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.
§ 102.  Conditions for patentability; novelty and loss of right to patent
A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to· the date of the application for patent in the United States, or

(c) he has abandoned the invention, or

(d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

(f) he did not himself invent the subject matter sought to be patented, or

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective. dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.
§ 103.  Conditions for patentability; non-obvious subject matter
A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having

sites to the valid issuance of a patent. Section 101 provides that a patentable invention must be new and useful. Section 102 states various defenses to claims of newness and usefulness. Section 103 provides that, in addition to claims of novelty and utility, the subject matter as a whole cannot have been obvious to one ordinarily skilled in the art.

In Graham v. John Deere Co., supra, the Supreme Court thoroughly analyzed the constitutional provision,[8] the statutory scheme, the case law, and the effects on that case law, of the 1952 Patent Act[9] which added section 103. It concluded that section 103 was merely a codification of the prior case law requirement of "invention."[10] Further, the procedure to be followed in determining whether the section 103 condition has been met was outlined:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. 383 U.S. at 17, 86 S.Ct. at 694.

■ The obviousness question here revolves around the Patent Office's combining prior references. Reliance may properly be placed on such a combination to negative patentability where the applicant's subject matter is suggested or "taught" by the prior references. Application of Van Deventer, 223 F.2d 274, 276, 42 C.C.P.A. 947 (1955); Application of Demarche, 219 F.2d 952, 956, 42 C.C.P.A. 793 (1955).

■ The test of obviousness, however, must be applied as of the time of the invention and not retrospectively as of the time of the suit. "Many things may seem obvious after they have been made, and for this reason courts should guard against slipping into use of hindsight. We must be careful to 'view the prior art without reading into that art the teachings of appellant's invention.' Application of Sporck, 301 F.2d 686, 689 [49 C.C. P.A. 1039] (1962)." Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406, 412 (6th Cir. 1964). The principle is well established. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944); L-O-F Glass Fibers Co. v. Watson, 97 U.S.App.D.C. 69, 72, 228 F.2d 40, 43 (1955); Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 269 F.2d 600, 603–604 (4th Cir. 1959).

■ Further, even if all of the elements used are old, a new result, an unexpected result, a far more efficient result, or a more economical result will satisfy the requirements of patentability. Thus, the Supreme Court, in The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1891), found the requisite invention in the applicant's method of twisting barbs around a first wire and then twisting a second wire around the first, keeping the barbs firmly in place. The prior art disclosed a method of hammering metal "spikes" onto a single wire. However, that method was not as economical, nor were the barbs as stable. The new result was first a barb that stayed in place, but more importantly it allowed fencing of cattle grazing lands in the west and southwest when it had not been practicable before.

ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

8. U.S. Const. art. 1, § 8, cl. 8 provides that the Congress shall have power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

9. 35 U.S.C. §§ 1–293 (1964).

10. Thus, nonobviousness becomes a synonym. The Court also noted that the now codified standard of nonobviousness has been applied without variation since at least as early as Hotchkiss v. Greenwood, 52 U.S. 248 (11 How.) 248, 13 L. Ed. 683 (1851).

Similarly in Blaw-Knox Co. v. I. D. Lain Co., 230 F.2d 373 (7 Cir. 1956), a patent was declared valid on a concrete highway mechanism even though it consisted of elements old in the art. This was because the patentee had "achieved the new beneficial result of eradication of the defects previously encountered in using heavy concrete." *Id.* at 376.

In Colgate-Palmolive Co. v. Carter Products, Inc., 230 F.2d 855 (4th Cir. 1956), the validity of a patent on a shaving lather in an aerosol can was sustained, and the principle was again applied. The elements—soap as lather, a can as a container, and gas liquified under pressure—were not new. What was new was the patentee's "mixture of the right gases, with the right soaps in the right proportions, confined in a container under the right pressure, so that a lather satisfactory for shaving purposes [was] * * * produced when the mixture was allowed to emerge." *Id.* at 858.

On the other hand, "a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results is not such invention as will sustain a patent." Smith v. Nichols, 88 U.S. 112 (21 Wall.) 112, 119, 22 L.Ed. 566 (1874). *Accord*, Little Mule Corp. v. The Lug All Co., 254 F.2d 268 (5th Cir. 1958).

Commercial success and the satisfaction of a long felt need are both secondary factors that can also bear on the question of obviousness. Graham v. John Deere Co., supra at 17, 35–36, 86 S.Ct. 684. The rationales supporting the use of each are intertwined. Evidence of a long standing need tends to indicate nonobviousness, because otherwise the need would not have persisted in the face of efforts directed toward solution. Potential commercial success, it is inferred, would probably have induced innovators to make such efforts. Evidence that the applicant's device has had commercial success tends to indicate that the other efforts were unsuccessful. Taken together, the evidence of a need and of success where others had tried and failed tends to show that the successful solution was not obvious.[11]

Even so, the presence of these secondary factors will not avail if the subject matter is clearly obvious. They are to be looked to only in a doubtful case. Graham v. John Deere Co., *supra,* at 35, 86 S.Ct. 684; Great Atl. & Pac. Tea Co. v. Supermkt. Equip. Corp., *supra* at 153, 71 S.Ct. 127.

We turn now to an application of these principles to the case at bar. The prior patents show (1) a static ripper and (2) implements which have vibrating or oscillating motion applied directly to their earth-working tools.[12] The question is whether it would have been obvious to one ordinarily skilled in the trade to combine an oscillating mechanism with the static ripper and further to mount the mechanism on a frame (rather than directly on each tool) with a view to reaching the result that Higley reached. We think that it would not have been.

Not only does Higley's oscillator apply movement to a frame, but the nature of the movement differs from that of the prior art. The prior art shows movement in the form of a vibration of the ground-working tools. In Higley's implement, by comparison, the tools on either side move alternatingly in and out of the ground while they also move laterally.

11. For a thorough analysis, apparently approved by the Supreme Court in Graham v. John Deere Co., *supra* at 36, 86 S.Ct. 684, see Note, *Subtests of "Nonobviousness": A nontechnical Approach to Patent Validity,* 112 U.Pa. L.Rev. 1169, 1172–77 (1964).

12. Miselli shows an alternate construction of a single-share plow in which an oscillator is mounted on the metal shank that attaches the plow to a tractor. We do not think that this alone, or in conjunction with the Bird static ripper, suggests the use of a frame and an alternating movement of the kind that Higley used.

We think, also, that the result Higley achieves is strikingly new. The machine completely shatters the soil between the earthworking tools. Consequently, the ground surface through which the implement passes becomes workable and ready to be planted.

Detailed testimony illustrated beyond question that the device satisfied a long felt need and that it has become a commercial success. Mr. Larson, a farmer in western Kansas for thirty-nine years, testified that he had been actively seeking a machine that would successfully break up the hardpan and that theretofore the only device available had to be towed by *two* crawler tractors. The Higley subtiller, he stated, broke up the hardpan much more completely than prior devices, could be towed by a rubber-tired farm tractor, and reduced the cost to between one-fourth and one-third of that of the former method. He testified further that as a result of the Higley machine's use, the ground retained more moisture and crop yield was substantially increased. Two other witnesses gave testimony equally as strong.[13]

Our view is that because a frame was used and because a new result was achieved, appellant's implement *could not* have been "clearly obvious" so as to preclude consideration of the evidence of commercial success and a long standing need. After considering those factors, together with the other evidence, we conclude that Higley's machine would not have been obvious to one of ordinary skill in the art within 35 U.S.C. § 103.

This result is reached through application of the standard long adhered to by the Supreme Court and reiterated in Graham v. John Deere Co., *supra*. Furthermore, we think the case is not unlike The Barbed Wire Patent, *supra*, where that same standard was applied. There, as here, the applicant's new result and the commercial success of his device were re-

lied on in sustaining the validity of a patent.

We would not lightly reverse the able trial judge; but after reading the transcript and examining the exhibits, "[we are] left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The judgment of the District Court dismissing the complaint is reversed, and judgment will be entered for the appellant as to all claims in issue. The Commissioner is authorized to issue a patent.

Reversed.

13. The panel witnessed motion pictures which had been offered in evidence at trial and which demonstrated, in support of the testimony, both the operation of the invention and the result achieved.

We thus could readily understand how the Patent Office conceded that Higley indeed is "marvelous" even as we fail to understand its contention that Higley was "obvious."