**SHU-CONDITIONER, INC., Plaintiff, Appellant,**

v.

**BIXBY BOX TOE COMPANY, Inc., Defendant, Appellee.**

**No. 5739.**

United States Court of Appeals
First Circuit.

Oct. 5, 1961.

Herbert P. Kenway, Boston, Mass., with whom George W. Crowley and Kenway, Jenney & Hildreth, Boston, Mass., were on the brief, for appellant.

W. R. Hulbert, Boston, Mass., with whom William W. Rymer and Fish, Richardson & Neave, Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

It may well be invention, even invention of a high order, to devise a smaller, lighter, simpler and cheaper machine to do the work of a much larger, heavier, more complicated and expensive one of the prior art. On the other hand, to achieve small size, light weight, simplicity and lower cost by the simple expedient of omitting a function of an earlier machine because some change in technology has made the function no longer necessary would, at least in the absence of very exceptional circumstances, be only a mechanic's expedient. To quote Mr. Justice Brown writing for the Court in Richards v. Chase Elevator Co., 1895, 159 U.S. 477, 486, 16 S.Ct. 53, 54, 40 L.Ed. 225: "While the omission of an element in a combination may constitute invention, if the result of the new combination be the same as before; yet if the omission of an element is attended by a corresponding omission of the function performed by that element, there is no invention, if the elements retained performed the same function as before." Application of this general, and indeed obvious, principle provides the answer to the basic question presented by this appeal from a judgment that the claims of

United States Patent No. 2,818,832 issued to George H. Bushway on January 7, 1958, for "Box Toe Blank Conditioning Machine" are invalid for lack of invention.[1]

For a great many years it has been common practice for shoemakers to insert a relatively stiff piece of material known as a box toe blank between the upper and the lining at the toe of the shoe so that that part of the shoe will hold its shape and present an upright, smoothly rounded appearance. Usually box toe blanks consist of a textile material, ordinarily flannel, impregnated with either a thermoplastic stiffening compound or with a stiffening compound which can be softened by the application of a suitable solvent and will stiffen again when the solvent evaporates. We are here concerned only with box toe blanks of the latter type, of which there are now two principal varieties; those stiffened with pyroxylin and those stiffened with polystyrene.

Pyroxylin blanks were invented in 1918 and soon thereafter were marketed in quantity by United Shoe Machinery Corporation under the trade name "Celastic." These blanks varied substantially in porosity depending upon variations in the thickness of the flannel used and the relative humidity of the day on which they happened to be manufactured. At one extreme these blanks were "spongy;" at the other they had a hard "skim coat." Thus all blanks of this type could not be immersed in the softening solvent for the same length of time, for some took longer to absorb the solvent and become pliable than others.[2]

To meet the problem of conditioning blanks of this type the early practice was to provide an open pan of solvent beside the operator of the machine used to pull the upper over the last as a preliminary step in the process of lasting the upper around the last and attaching it to the insole. The operator dipped a blank as it came from the manufacturer into the pan of solvent and when it became limp and flexible enough for use he interleaved it between the upper and the lining just before inserting the upper and the last into the pulling over machine. After the shoe had been lasted the solvent gradually evaporated from the box toe blank and it resumed its former stiff condition.

This process left something to be desired. Its success depended upon the skill and judgment of the shoe worker and it was also not only inherently sloppy but also dangerous because the usual solvents used were highly inflammable. Early efforts to produce a commercially practical machine to condition box toe blanks were not successful, the patent to Kane No. 1,424,914 and the patent to Lovell, No. 1,766,442 were only "paper patents," but eventually an employee of United Shoe Machinery Corporation named A. R. Schoenky obtained a basic patent in January, 1933, No. 1,895,524, and an improvement patent in September of that year, No. 1,927,954, covering a machine for the purpose of conditioning Pyroxylin blanks which was adopted by United Shoe Machinery Corporation and went into extensive use.

It is not necessary to describe the Schoenky machine in either its original or improved form in complete detail. It will suffice to say that in his machine the box toe blank is fed through a slot in the housing encasing its moving parts into engagement between two cylindrical rolls, a smooth one on top of a lower one consisting of a number of circular saw blades mounted side by side on a shaft. The sharp projections on the periphery

---

1. The judgment appealed from also adjudged the claims of the Bushway patent invalid because of public use and sale of machines embodying the asserted invention more than a year prior to the date the claims were presented to the Patent Office. The judgment also stated that if valid the claims would be infringed by the appellee's machines.

2. If a super-saturated blank were put into a shoe the excess solvent would soak through the lining and cement the assembled shoe to the last so that it could not be removed. Moreover, excessive solvent would be transferred by the workers' fingers to the leather surface of the shoe requiring extensive repairs.

of the lower roll formed by the teeth of the saws of which it is composed have two functions. One function is to prick and brush up the hard surface of blanks having a "skim coat" to render them more porous so that they can readily soak up the solvent in which the lower portion of the roll is immersed; the other is to bite into the blank and drag it along as the roll revolves.[3] As the blank emerges from its dip in the solvent it encounters a plate which serves to wipe excess solvent from its outer surface. The blank next encounters a "stripper plate" which picks the advancing edge of the blank off the saw-toothed roll and deflects it into engagement with another saw-toothed roll, the function of which, in cooperation with a member having a curved lower surface adjacent to the periphery of the roll, is to drag the blank along while wiping off excess solvent and then discharge it through a slot onto a slowly moving belt enclosed in a housing. This belt having a brushlike surface allows less saturated blanks to "mull," that is, absorb more solvent, from the solvent-vapour saturated atmosphere in the housing around the belt. The conditioned blanks are discharged from the belt through a slot for the operator to pick up and use. This, in substance, is the larger, heavier, more complicated and expensive machine of the prior art.

It was apparently the only commercially acceptable machine on the market prior to Bushway, for it was manufactured in quantity by United Shoe Machinery Corporation and widely used in the shoe industry. It operated successfully on "Celastic" box toe blanks and also on a later more uniform and hence easier to condition type of pyroxylin blank called "Lucky Strike" which appeared on the market in the mid-1930's.

The other solvent type of box toe blank, the polystyrene, or "styrene" type, was invented in the late 1940's and came onto the market in commercial quantities late in 1951 or early in 1952. These blanks, unlike the earlier pyroxylin blanks which the Schoenky machine was specifically designed to condition, have a discontinuous surface film so that in consequence they readily and uniformly soak up the solvent used to soften them. A high degree of uniformity can be attained in their production and, moreover, the softening solvent used for them, unlike that used for the earlier pyroxylin blanks, is less inflammable and has little or no deleterious effect upon the leather finish of a shoe.

At about the time these blanks came on the market in commercial quantities the patentee, Bushway, learned from a nephew in the box toe blank manufacturing business that "somebody would do well with a * * * box toe conditioning machine," and although he knew nothing about shoe machinery or shoe manufacturing, he immediately set to work to devise one. In May 1954 he filed application for the patent in suit.

■ Bushway omits two of the three rolls in the Schoenky machine and he also omits Schoenky's wiping plates and brush-surfaced belt used to mull and convey conditioned box toe blanks to the slot through which they are discharged for use. For present purposes the Bushway machine consists essentially of a cylindrical roll studded with adjustable sharp projections, steel victrola needles were used in its earlier embodiments, mounted on a shaft for rotation in a housing the bottom of which is semi-circular in cross-section and is spaced just far enough away from the cylinder so that its projecting pins will not touch the housing as the cylinder revolves. Box toe blanks are fed directly into the machine through a slot, are caught by the pins on the revolving cylinder and held on the pins by the adjacent housing while whisked through a supply of solvent in the bottom of the housing. A stripping device disengages the blank from the pins of the cylinder as the blank emerges from its dipping in the solvent and discharges the

3. A curved spring plate adjacent the lower portions of the periphery of this roll is provided to prevent the blank from falling off the roll.

conditioned blank directly through a slot onto a grating.

The omission of the feeding and delivery rolls of Schoenky and the substitution therefor of direct feeding onto the dipping roll, and direct delivery therefrom without wiping and "mulling" on Schoenky's brush-surfaced belt resulted in a much smaller, lighter, less complicated and cheaper machine. And Bushway's machine certainly worked satisfactorily on polystyrene blanks and promptly achieved substantial commercial success based on its obvious advantages in conditioning blanks of that type.

But was Bushway's achievement and consequent success made possible by the advent of the polystyrene blank with its less exacting conditioning requirements? The court answered this question in the affirmative saying: "The machine of the patent in suit is a simplification of prior art machines and was made possible by new and simplified processing requirements." We agree.

The basic, indeed as is evident from the file wrapper, the essential, element of the Bushway patent is the elimination of Schoenky's feed and delivery rolls and the substitution therefor of the expedient of feeding the blanks through the entry slot into direct engagement with the pins of the dipping roll and feeding them directly out from the pin-studded dipping roll through the exit slot. If Schoenky's feeding and delivery rolls served no function other than feeding and delivery, and Bushway was the first to see that rolls for feeding and delivery were unnecessary, perhaps much might be said for Bushway's contribution. But Schoenky's rolls did more than feed and deliver. They also pricked and brushed, and so made more readily permeable, the earlier pyroxylin blanks the Schoenky machine was specifically designed to process, some of which came from the factory with a hard "skin-coat." But this pricking and brushing is not a processing requirement for polystyrene blanks with their discontinuous surface film. So eliminating Schoenky's rolls in processing these blanks can hardly be called "invention," for it would be only the obvious response to simplified conditioning requirements.

The practical test is whether the Bushway machine without Schoenky's feeding, delivery and pricking rolls would work satisfactorily on the earlier pyroxylin blanks the Schoenky machine was designed to condition. For if it would Bushway might well be said to have contributed simplicity, small size, light weight and cheapness to a prior art machine, all important matters.

The evidence on this point is not as clear and definite as it might be. But there is expert testimony that the Bushway machine would not prove satisfactory on pyroxylin blanks because of its omission of Schoenky's pricking and brushing function. And there is testimony of a witness familiar with shoe manufacturing that he had never seen the Bushway machine used on pyroxylin blanks. This testimony, augmented by the logical inference to be drawn from the close relationship between the development of the Bushway machine and the advent of polystyrene blanks on the market is enough to support the finding of the district court quoted above that the simplification wrought by Bushway was only made possible by the advent of blanks with less exacting conditioning requirements.

Judgment will be entered affirming the judgment of the District Court.