UARCO INCORPORATED, a corporation, Plaintiff-Appellant,

v.

MOORE BUSINESS FORMS, INC., a corporation, Defendant-Appellee.

No. 18303.

United States Court of Appeals, Seventh Circuit.

March 30, 1971.

Rehearing Denied April 27, 1971.

James C. Wood, James P. Hume, Hume, Clement, Hume & Lee, William R. McNair, Chicago, Ill., for appellant; Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

Theodore R. Scott, Chicago, Ill., Walter D. Ames, Lawrence R. Radanovic, Watson, Cole, Grindle & Watson, Washington, D. C., McDougall, Hersh & Scott, Chicago, Ill., for appellee.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and PELL, Circuit Judges.

DUFFY, Senior Circuit Judge.

Plaintiff (Uarco) brought this suit for the alleged infringement of its United States Patent No. 3,104,799 (799) which was issued to Donald J. Steidinger on September 24, 1963 with eighteen claims. The defendant, Moore Business Forms, Inc. (Moore) counterclaimed for a finding of invalidity and of noninfringement.

Moore filed a motion for summary judgment, alleging invalidity of the patent in suit as being obvious in view of prior art patents to Bonnaffon, No. 697,971; Wanser, No. 2,148,886 and Sherman, No. 2,257,766. The District Court denied this motion stating: "A patent such as this, which is designed for use in complex electrical processing machines, should not be declared invalid on a motion for summary judgment just because it has some features in common with a 1902 [Bonnaffon] method of using one sheet at a time to make an envelope structure."

However, at the conclusion of the trial, the District Court found the patent in suit invalid as being obvious in view of the prior art, 306 F.Supp. 369. The Court also awarded attorney fees to Moore for a period commencing with the date when Moore notified Uarco of the existence of Bonnaffon Patent No. 697,971.

Envelope assemblies manufactured and sold by defendant Moore under the name "SPEEDIMAILER" were accused by plaintiff of infringing claims 3, 5 and 10 of the patent in suit. Those manufactured and sold under the Suburban Trust name were accused of infringing claims 1 to 6, 10 to 13 and 18. Claim 13 was abandoned after the trial. It recited a single unit of the series set forth in claims 1 to 6 and 10 to 12.

The envelope assemblies alleged by plaintiff to be made in accord with its patent (799) have been sold by it to the public under the name "DATA-MAILER." This product "DATA-MAILER" followed substantially the disclosure of figures 1 through 4 of the (799) patent in suit.

Sales grew rapidly. There was no other such product on the market with which it competed. By 1968, annual sales of "DATA-MAILER" reached about three and a half million dollars.

Defendant Moore Business Forms, Inc. is the largest single manufacturer of business forms in the United States. In March 1965, the defendant's Products Manager wrote to his Company officials that it was important for Moore to come up with something to compete with Uarco's new product [DATA-MAILER]. Eventually defendant began producing its "SPEEDIMAILER" which did successfully compete with the plaintiff's product.

The field or area involving the claimed invention is that of continuous business forms. In actual use, business forms necessarily have several different parts. These include stationery sheets of various kinds and shapes which are intended to be transmitted through the mails to various recipients. Bills, premium notices, invoices or university grades are among the uses for such forms.

Envelopes are a required part of the business form assembly and are used both for enclosing the record sheets or forms for movement through the mails and also, in many instances, as a return envelope to be sent out with the original mailing.

It is essential to apply certain personal and individualized information to

both the carrying envelope, the sheet material contained inside, and, in many cases, to the return envelope as well. Prior to the use of computers, tabulators and the like, this type of business mailing was carried out piece by piece. However, with the advent of the automated machines, effort was made to have the personalized information applied to the form sheets as a continuous strip or ribbon. But even when this was done, envelopes still had to be individually addressed and stuffed. This was so because each envelope still existed as a separate entity, constructed from a single folded sheet and thus difficult to be adapted to continuous strips.

Efforts were made to attach the individual envelopes to a long carrier strip, but this operation still ultimately necessitated hand stuffing and sealing. Attempts were then made to substitute layers of plies with spot carbons and tear strips for the individually stuffed and sealed envelopes. These plies were constructed in continuous strips with the contents of each envelope sealed inside. The spot carbons allowed a single printing for both the outside master sheet and an internal information sheet. Both the Wanser Patent and the (799) patent in suit dealt with this type of operation.

Specifically, the (799) or Steidinger patent describes "an assembly having a series of sealed stuffed envelopes." Steidinger utilizes continuous form stationery assemblies of individually sealed envelopes, each containing inserts which are to be imprinted by means of spot carbons while enclosed in the sealed envelopes, and manufactured from superimposed ply strips. The top ply comprises the business record and the underlying plies form the envelopes and their contents.

In the Steidinger assembly, the envelopes have a single tear strip, usually located on the left edge, by which the recipient opens the envelope. A thumb tab indentation allows him to remove the contents easily. Before being opened, these same tear strips anchor the contents of the envelope in place so that all forms are lined up in proper registration for printing. This single tear strip arrangement is accomplished in Steidinger by pre-cutting the insert strip in spaces corresponding to the top and bottom of the outer envelope, creating an insert web structure which allows the outer envelope to be glued together, while permitting up to three margins of the insert to be freed for easy opening. It is this tear strip operation adapted to continuous strips which the Patent Office held and which plaintiff asserts here, distinguishes Steidinger from prior art.

During prosecution of the application of the Steidinger patent in suit, the Patent Office cited the Wanser and Sherman patents. However, after recognizing what it considered to be the differences between the claimed construction and the disclosure of the prior art, the Patent Office issued the patent with the eighteen claims in the exact same form as when originally filed.

Three patents are prior art to the Steidinger patent.

*Sherman* (October 7, 1941).

Sherman covered a "series connected envelope and check" which utilized spot carbons to imprint both a master and internal sheets as well as portions of an outer envelope. The envelope in Sherman was positioned in a pocket on the underside of the assembly and required hand stuffing and sealing. Sherman disclosed feed holes on the assembly strips, for adaptation to tabulators or computors.

*Wanser* (February 28, 1939).

Wanser disclosed a continuous series of sealed, stuffed envelopes with the contents contained therein. Like Steidinger, the series was connected by perforations. Unlike Steidinger, there were tear strips on all four sides of the envelope all of which were required to be removed in order for the contents to be extracted. There was no cut out web insert ply structure in Wanser.

*Bonnaffon* (April 22, 1902).

Bonnaffon deals with a single envelope construction with a possible insert enclosed. Bonnaffon always folds one sheet of paper. By means of folds in the single sheet, the internal envelope or insert sheet (but not both) may be placed inside the outer envelope. As in Steidinger, one tear strip both holds the inner envelope in place and allows for its removal when torn. Unlike Steidinger and Wanser, Bonnaffon is not constructed out of pasted plies, and due to its folding construction, it is submitted, could not be adapted to continuous strips.

Bonnaffon was not cited as prior art by the Patent Office when application for the patent in suit was made in 1961. In 1969, Bonnaffon was cited by defendant Moore to plaintiff. At that time, Bonnaffon was found to be classified in Class 229, Subclass 72 (Compartment Envelopes). That same subclass was among those searched in 1961 when the patent in suit was originally prosecuted, but it is not definitely known whether Bonnaffon was in that subclass at that time.

 With these facts in mind, we turn to the ultimate issue of obviousness and conclude that the lower court erred in this respect. We hold that the Steidinger patent complied with the required standards of non-obviousness set forth in 35 U.S.C. § 103 [1] and discussed in Graham v. John Deere, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The Court in *Graham* stated the analytical steps to be taken in deciding this question:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." (383 U.S. at pages 17–18, 86 S.Ct. at page 694).

Under the prior art it is true that a continuous series of sealed, stuffed envelopes with possible inserts enclosed and printed by means of spot carbons was available in the Wanser patent. Likewise, a single envelope construction with a possible inner envelope enclosed and utilizing a single tear strip was available in the folded envelope of Bonnaffon. But, under the prior art, no single invention existed which combined the single tear strip construction of Bonnaffon with the continuous series of pasted plies contained in Wanser. Wanser involved four tear strips and Bonnaffon involved one envelope construction. Sherman, although containing feed holes and spot carbons for a series connected envelope with possible inserts, still involved hand sealing as well as removal of envelopes from their carrier pockets. Under the prior art, the only way in which individually folded envelopes could be placed in a continuous series for automated use was by long carrier strips which were then removed after printing and which still required hand stuffing and sealing. At the time of Steidinger's invention, envelopes utilizing the carrier strip method were commercially available in the form of PERFELOPE and CURTISS 1000. A slight improvement on this method was available in CON-

---

1. A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

VELOPE, which also required hand sealing.

Steidinger differed from the prior art in that it was the first continuous form sealed stuffed envelope assembly which still allowed easy extractability on the part of the recipient by means of the single tear strip device. The District Court held that this result would have been obvious at the time of Steidinger's invention by merely combining Wanser and Bonnaffon. We do not think that such a combination is suggested by Wanser and Bonnaffon. It is our view that Steidinger contained a specific unique contribution in the form of the cut-out web insert ply structure which allowed the contents of an envelope to be held in place for printing and yet to be easily extracted with a single tear strip. Wanser did not contain or suggest such a cut-out web structure but rather disclosed a pasting together of all plies on all margins with four required tear strips. There is no question but that the single tear strip of Steidinger was a great improvement over Wanser which had required an awkward and time-consuming tearing of all four marginal strips before any contents could be extracted.

It also is clear that nothing in Bonnaffon's folded structure for single envelopes suggests Steidinger. Bonnaffon always dealt with a single envelope with one possible insert whereas Steidinger piled up as many plies as were necessary for several inserts. Each Bonnaffon envelope, moreover, was created by a folded structure and such a folded structure could not be adapted to a continuous series, while Steidinger was specifically designed for such series. In fact, the only means by which the folded envelope construction of Bonnaffon might have been so adapted was by the old carrier strip method, which was avoided by Steidinger and, in any case, would have required hand stuffing and sealing. We note also that even each individual envelope of Bonnaffon might not fully accomplish the Steidinger result since Bonnaffon provided for one insert which could be either an envelope or an information sheet, but not both.

We note also that nothing in the Sherman patent suggested the unique insert ply structure of Steidinger. Sherman required removal of envelopes from the carrier pockets and also required hand sealing. Clearly the Steidinger construction was a significant improvement on Sherman.

Although the District Court made no specific finding on the level of ordinary skill in the pertinent art in this case, we find that such a person would have been one familiar with business form envelope assembly design. Both plaintiff and defendant presented witnesses who could be deemed so skilled in the art.

We conclude that the result of the Steidinger manifolding assembly was a new and useful invention which had an "effect greater than the sum of the several effects taken separately." Anderson's—Black Rock v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed. 2d 258 (1969); Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180 (7 Cir., 1971). Furthermore, we hold that Steidinger's cut-out structure for insert plies was a new and useful contribution which resulted in the first practical, presealed, prestuffed envelope in a continuous manifolding assembly and yet which had easy extractability. The structures of Bonnaffon and Wanser could not be readily combined to produce Steidinger. We feel that the District Court's finding that Wanser's four margin tear strips could merely be replaced by the single margin tear strip of Bonnaffon is best answered by our statement in Welsh Company v. Chernivsky, 342 F.2d 586 (7th Cir., 1965): "We think the root of the district court's error was in considering Chernivsky's claim 1, * * * against the prior art piece by piece instead of considering the device totally, without properly applying the well-established principle that a combination of old elements in a manner that is unobvious to one skilled in the trade and which produces a new and

useful result may be patented." (at page 590).

■ Further supporting our conclusion is the fact that portions of both Wanser and Bonnaffon would have had to be discarded in order to produce a result similar to Steidinger. In the case of Wanser the insert sheet would have had to be discarded and replaced with the cut-out insert ply structures in order to produce the single tear strip result in a continuous series envelope assembly. In the case of Bonnaffon, the entire folded sheet structure for single envelopes would have to be replaced with a series of pasted plies. Even if this could be avoided and the desired result of adapting Bonnaffon to a continuous series could be achieved, an additional sheet would still have to be added for each individual envelope if more than one insert (envelope or information sheet) were contemplated. We have stated that where the parts of the prior art device must be discarded in order to get to the patented invention, then such art does not make the invention obvious under the provisions of 35 U.S.C. § 103. Ortman v. Maass, 7, 391 F.2d 677 (7 Cir., 1968).

■ We think and so hold that the three references, Bonnaffon, Wanser and Sherman, which were relied upon by the District Court are, in no way, combinable to produce Steidinger's invention. We find that Steidinger's invention fulfilled the nonobviousness criteria of 35 U.S.C. § 103. As there is also no support for finding that the earlier patents anticipated Steidinger, we further find and so hold that there was no anticipation under 35 U.S.C. § 102.

The question of the presumption of validity of the patent in suit has been raised since Bonnaffon was not cited by the Patent Office when the patent was originally prosecuted in 1961. The District Court found that the presumption of validity did not apply to Bonnaffon, citing among other decisions Appleton Electric Co. v. Efengee Electrical Supply Company, 7 Cir., 412 F.2d 579, 581, n. 4.

Appellants claim that the case before us is more akin to Canaan Products, Inc. v. Edward Don & Company, 388 F.2d 540, at 544, where this Court upheld a finding that, where the patent was currently located in a class and subclass which was one of the classes searched by the examiner, there was "no reason to believe that the * * * patent is not one of the patents studied by the examiner in his search and discarded as not being relevant." Moreover, appellant argues that Bonnaffon was "no more pertinent" than the Wanser and Sherman patents cited by the Patent Office, thus permitting the presumption of validity to continue.

Appellee asserts that the presumption of validity was correctly rejected by the District Court since, in its opinion there is a very good reason to believe that the examiner never looked at Bonnaffon during his search. That reason is, in appellee's opinion, the allegation that claim 13 of the Steidinger patent reads directly on Bonnaffon and accordingly was abandoned when Bonnaffon was discovered. Since it is unlikely that the examiner would have upheld claim 13 had he known that it read directly on the earlier patent, we may assume, appellee argues, that Bonnaffon never was discovered, and that therefore we should not apply Canaan Products.

■ We feel that the presumption of validity as against Bonnaffon is still viable, because Bonnaffon is no more pertinent than the cited prior art as against the seventeen claims of Steidinger now before us. Bonnaffon, as discussed above, dealt with but a single envelope construction and, even if read upon by claim 13, would not be more pertinent to the remaining claims which dealt with a continuous form manifolding envelope assembly. Just as we have held that Bonnaffon could not feasibly be adapted to the continuous form structure, we think it also is likely that the examiner discarded Bonnaffon as not pertinent for that reason. Even if the presumption should be found not to apply, we do not think that factor would

compel a different result than we have reached.

We think it is pertinent to note that plaintiff's "DATA-MAILER", manufactured under the Steidinger patent, enjoyed outstanding commercial success. There was much evidence that defendant was extremely concerned over the great favor in the market place which "DATA-MAILER" enjoyed so that it finally was forced to produce its "SPEEDIMAILER", the accused infringing product. We think it unfair to attribute "DATA-MAILER'S" commercial success solely to the ease by which it was adapted to computers and other automated devices and to discard such for that reason. The important thing is that the entire improved product was a success commercially, and we feel that the evidence should have been considered in this light.

*Attorney Fees.*

The decision of the District Court included an award of attorney fees to the defendant. The trial court stated—"The plaintiff should not have persisted in asserting its clearly invalid claims thereby causing the defendant the expense of a trial."

█ As hereinbefore indicated, the claims of the patent in suit were found by the trial court to be obvious over a combination of the Bonnaffon and Wanser patents. We have held the District Court was in error in that respect.

Here, there was no identical structure in the prior art. An award of attorney fees should not be made "in an ordinary typical infringement suit." Apex Electrical Manufacturing Company v. Altorfer Bros. Co., 238 F.2d 867 at 874 (7 Cir., 1956). Nor was there, in this case, any vexatious or protracted litigation. Rex Chainbelt, Inc. v. General Kinematics Corp., 363 F.2d 336, 348 (7 Cir., 1966). Furthermore, there was no element of bad faith or inequitable conduct either in obtaining the patent or bringing this suit.

The trial court also stated " * * * the plaintiff had been the assignee of

the Wanser patent and had previously manufactured the Wanser structure." The Court was in error in this respect. The record shows plaintiff never made the Wanser structure. In our view, this was not a case where attorney fees should have been taxed against the plaintiff and this would be true had the District Court's finding of invalidity been sustained.

The judgment of the District Court finding the No. 3,104,799 Steidinger patent invalid is reversed. The judgment making an allowance for attorney fees to the defendant also is reversed. The cause is remanded to the District Court for full consideration of the issue as to alleged infringement.

Reversed and remanded.