**SKIL CORPORATION, Plaintiff-Appellee,**

v.

**LUCERNE PRODUCTS, INC.,
Defendant-Appellant.**

**No. 73–1716.**

United States Court of Appeals,
Seventh Circuit.

Heard May 23, 1974.

Decided Oct. 4, 1974.

Rehearings Denied Oct. 23, 1974 and
Nov. 12, 1974.

James Van Santen and Lewis T. Steadman, Chicago, Ill., for defendant-appellant.

Clarence J. Fleming, Thomas A. Reynolds, Jr., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and TONE, Circuit Judges, and MATTHES,* Senior Circuit Judge.

---

* Senior Circuit Judge M. C. Matthes of the Eighth Circuit is sitting by designation.

TONE, Circuit Judge.

This is an appeal by defendant Lucerne Products, Inc. from a judgment holding Claim 5 of plaintiff Skil Corporation's Reissue Patent No. 26,781 valid and infringed, declaring defendant Lucerne Products, Inc.'s Patent No. 3,389,365 invalid under 35 U.S.C. § 102(b) because of sales more than one year before the application was filed, and awarding attorneys' fees to plaintiff by reason of defendant's conduct in seeking to defend the latter patent. Both patents cover speed control devices for switches in variable speed portable electric drills.

Skil manufactures and sells power tools, including variable speed portable electric drills. Lucerne manufactures and sells electric switches that are used in power tools.

The switches involved in this case are mounted in the trigger assembly of the drill. To vary the speed of the drill's electric motor, a rheostat is mounted in the spring-loaded movable trigger of the drill, and as the trigger is depressed or released the rheostat moves, thereby changing the resistance in the circuit of the motor and thus the speed of the motor.

Early in 1964, Skil negotiated a contract with Benjamin H. Matthews, Lucerne's president and principal stockholder, calling for the development by Lucerne of a trigger speed control switch for Skil electric drills. Skil placed a purchase order for 100,000 speed control switches to be delivered over an 18-month period, subject, however, to approval of the switch by Underwriters' Laboratories.

Matthews first developed a switch containing a "horizontal" rheostat, which was a flat strip of carbon-coated material mounted in the trigger mechanism on a horizontal plane. This mechanism proved defective in certain respects, and Matthews redesigned the switch, rotating the strip 90°, putting it on a vertical plane, and formed the movable contact as a sliding clamp with spring fingers on either side of the strip. Triggers incorporating the "vertical" rheostat were shipped to Skil in August 1964. Before August 23, 1964, over 1400 switches with either the horizontal or the vertical rheostat were shipped to Skil and credited against the purchase order for 100,000. Skil drills manufactured beginning in early August contained the vertical rheostat switches. By the end of August 1964, Skil sold 449 drills containing the Matthews switch to the public. On September 3, 1964, Underwriters' Laboratories approved the switch. On August 23, 1965, Matthews filed a patent application on the switch, which resulted in the issuance of U.S. Patent 3,389,365.

Sometime after it commenced manufacturing and selling drills containing the vertical rheostat Lucerne switch, Skil decided that a fine speed adjustability feature should be added to the switch. The project of developing this feature was assigned to Carl Frenzel, a Skil engineer. Frenzel successfully completed his assignment in the manner described below and on December 27, 1965, an application for patent was filed on his behalf. The application was "made special," i. e., given accelerated treatment at the request of the applicant upon his presentation to the Patent Office of the results of a prior art search which, he represented, contained the most recent prior art. U.S. Patent Letter 3,309,484, containing ten claims, was issued on Frenzel's application on March 14, 1967. Over a year later Frenzel filed an application for reissue of the patent based on a second version of the adjustability feature. U.S. Reissue Patent 26,781 containing the original ten claims and additional claims 11 to 14, was granted on February 3, 1970.

Lucerne developed, for sales to other customers after the eighteen month exclusive contract with Skil expired, a speed control adjustability mechanism different from the one manufactured

and sold to Skil, which contained the Frenzel development. This new Lucerne mechanism was developed by Lucerne's Vice President for Sales, Edward Sahrbacker, who received a separate patent, U.S. Patent Letter 3,603,757, on the adjustability switch he developed. The validity of this patent is not before us.

Skil brought this patent infringement action against one of Lucerne's customers, Rockwell Manufacturing Company, alleging that Rockwell, through the use of Lucerne trigger mechanisms in a drill, infringed Frenzel's Reissue Patent 26,781. Lucerne, as Rockwell's indemnitor, was substituted as the defendant. Lucerne filed a counterclaim asserting that Skil had infringed its Matthews Patent. Skil then counterclaimed against Lucerne under the Declaratory Judgment Act for a determination that the Matthews Patent was not infringed and was invalid.

Skil originally claimed that Lucerne had infringed eight claims of its Frenzel Patent but withdrew prior to trial all claims except 2, 3, and 5. Lucerne withdrew its counterclaim, since it would be able to litigate the validity of the Matthews Patent under the Skil counterclaim. Claim 1 was also considered by the District Court, because Claim 5 is dependent on Claim 1.

The District Court held Claims 1, 2, and 3 of the Frenzel patent invalid but held Claim 5 valid and infringed. The court also held the Matthews patent invalid and assessed attorneys' fees against Lucerne on that aspect of the case. Lucerne has appealed the findings of validity of Claim 5 of the Frenzel patent and invalidity of the Matthews patent and the awarding of attorneys' fees. Since Skil did not cross appeal, the validity of Claims 1, 2, and 3 of the Frenzel patent is not before us.

*Invalidity of Claim 5 of Frenzel Patent*

■■ Frenzel's improvement, in substance, consisted of changing the Lucerne switch,[1] which can form no part of his invention, in the following manner: inserting a stop member between the trigger and the trigger casing positioned to engage the front edge of the casing; mounting a horizontal adjusting screw with its head on the face of the trigger, it shaft passing through the trigger and its threads engaging threads in a hole in the front of the stop member, so that turning the screw variably positions the stop member; and causing the locking pin (which was already in the Lucerne switch) to engage with the stop member instead of directly with the trigger.[2] Turning the screw causes the stop member, or "lug means," to move along the

1. The Lucerne switch, before Frenzel's improvement, had the following basic elements:

2. The stop member (with its round hole to engage the locking pin) and adjusting screw added by Frenzel are shown in the patent (Figure 5) as follows:

shaft of the screw, which varies the position of the stop member and thereby controls how far the trigger can be depressed. When the locking pin is engaged in the stop member, turning the screw moves the trigger.[3] Moving the trigger moves the rheostat and thus changes the speed of the electric motor.

The description of this application of simple mechanical principles in the Frenzel patent proliferated into 14 claims, only one of which, Claim 5, is before us for adjudication. Claims 1, 2 and 3 as we have stated, were held invalid by the District Court, and Skil has not appealed from that determination. The prior art Sparklin Patent No. 2,525,839, which the District Court held "preclude[d] Claims 1 and 2 of Frenzel's patent on the ground of obviousness, if not complete anticipation," teaches controlling the speed of an electric motor by varying the amount of trigger depression and a means of locking the trigger in the depressed position. The prior art Ingersoll-Rand pneumatic impact tool, which the District Court held precluded Claim 3, and which was not before the Patent Office in the prosecution of plaintiff's original or reissue patent, utilized an adjusting screw to vary the amount of trigger depression.

Frenzel's stop member and adjusting screw are described ("lug means carried by said trigger [and] . . . a manually operable adjustment means including a member rotatably carried by the trigger and engaged with said lug means for moving the same in either direction along said path of movement thereof") in invalid Claim 1, on which Claim 5 is dependent. Claim 5, which merely adds the locking feature, reads as follows:

> "The switch device according to claim 1 further defined by, trigger locking means including a locking pin, which locking means is mounted on said casing for extending through a bore in the tool housing thereby to expose said pin for manual depression, catch means carried by said lug means and adapted to be releasably locked by said pin when the catch means is aligned with the pin."

Invalid Claim 2 describes the entire switch, including the locking means. The portion of invalid Claim 2 which is comparable to Claim 5 is as follows:

> ". . . said device including locking means engagable with said element [the stop member] for locking said trigger in any one of its positions determined by engagement of said element with said abatement means."

The District Court found in Claim 5 a "vernier adjustment" which he did not find in Claim 2. The court said, referring to the patent drawings, that it was the "unique combination of elements 24, 27 and 42 in connection with the trigger which results in the fine adjustment or vernier capability that we find totally lacking in" the cited prior art. Element 24 is the lug portion of the stop member that is threaded to receive the adjusting screw and abuts against the trigger housing; 27 is the hole in the side plate

---

3. The entire Frenzel switch device is shown in the patent (Figure 4) as follows:

of the stop member that receives the locking pin; and 42 is the locking pin.[4]

The stop member and the adjusting screw are in Claim 1, which the District Court held invalid, and are concededly not invention. The invention, if Claim 5 is valid and Claim 1 is not, must consist of adding the locking pin and the hole in the stop member. The locking pin and a rectangular depression in the trigger to engage the pin were already in the Lucerne switch before Frenzel made his improvement. He simply made the locking pin engage with the stop member, which is connected to the trigger by the adjusting screw, instead of directly with the trigger.

We do not have the benefit of specific findings by the District Court as to the level of ordinary skill in the art (cf. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 1966)), but it is apparent from the record that the designing of portable electric tools is a crowded art in which there is a high level of ordinary skill. We think Frenzel's improvement would have been obvious to any person with ordinary skill in that art. We therefore hold Claim 5 invalid for obviousness.

In reaching this conclusion we apply the standard that a claimed invention consisting of old elements must pass a "rather severe test," Toro Mfg. Corp. v. Jacobson Mfg. Co., 357 F.2d 901, 904 (7th Cir. 1966), and are obedient to the mandate laid down in A & P Tea Co. v. Supermarket Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950):

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

At trial, Lucerne introduced evidence concerning a trigger device developed by Singer Manufacturing Company, a Skil competitor, the subject of Winchester Patent 3,439,248, contending that the Singer device was reduced to practice prior to the Frenzel device and therefore was a part of the prior art. The District Court noted that there was an interference pending before the U.S. Patent Office but refused to await the outcome of that proceeding and held that the depositions and evidence presented by Lucerne failed to prove the priority of the Singer device. While this appeal was pending, the Patent Office Board of Interference Examiners concluded that Singer had demonstrated an actual reduction to practice of its device prior to the date conceded by Frenzel to be the date of conception of his device. Patent Interference No. 97,893, Winchester, et al. v. Frenzel, February 25, 1974. The Winchester patent shows a device that is similar in important respects to Frenzel's and is capable of being locked into any one of four positions. Its teaching, whether treated as prior art or as evidence of the state of skill in the art and the ease with which an adjustability feature could be designed by one seeking to do so, reinforces our conclusion that Claim 5 is invalid for obviousness.

*Invalidity of the Matthews Patent under Section 102(b)*

■ The District Court held the Matthews patent invalid under 35 U.S.C. § 102(b), which denies patentability if

"the invention was . . . in public use or on sale in this country more than one year prior to the date of the

---

4. See the drawings in footnotes 2 and 3, *supra.*

application for patent in the United States, . . . ."

The Matthews application was filed August 23, 1965. Lucerne contends that the sale of the switches developed under the Matthews patent before September 3, 1964, the date on which Underwriters' approval was received, were experimental and therefore not sales under the statute. The District Court's holding that there was an actual sale before August 23, 1964, the date one year before the patent application was filed, is adequately supported by the evidence summarized above that in July and August 1964 Lucerne shipped to Skil over 1400 trigger mechanisms which were credited against the Skil purchase order of 100,000, and a substantial number of these switches were incorporated by Skil into drills sold to the public. Moreover, in a deposition in another case, Skil Corporation v. Sears Roebuck & Co. and Culter-Hammer, Inc., Matthews himself testified that the first sale of the speed control device to Skil was on April 22, 1964 and did not state that this sale was on an experimental basis. The District Court properly concluded that "the switch had been commercially sold to Skil and thereby dedicated to the public more than a year before the filing date."

## Attorneys' Fees

■ The last issue to be decided is whether the District Court erred in awarding attorneys' fees to Skil as the prevailing party on the Matthews patent claim under the authority of 35 U.S.C. § 285, which provides:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

The district judge appears to have based his determination that the case was "exceptional" principally on his finding that the testimony of Matthews that sales before August 23, 1964 were for experimental purposes, was disingenuous. The court said that the testimony was

". . . contrary to his company's prior position and contrary to all documentary evidence. The disingenuousness of his testimony on this subject impressed this court at the time as a gross disregard of the facts, if not bad faith, and as an ill-advised attempt to salvage an invalid patent."

The court concluded that in view of our decision in L. F. Strassheim Co. v. Gold Medal Folding Furniture Co., 477 F.2d 818, 824 (7th Cir. 1973), it was unnecessary to determine that there was fraud in order to award attorneys' fees under 35 U.S.C. § 285, and that it was enough to find, as the court did, that the defendant's conduct was "unreasonable, without legal justification and caused gross injustice to the plaintiff." Lucerne contends that an unconscionable act in the nature of fraud or bad faith is necessary to make the case exceptional under the statute, and that since the District Court found neither of these elements present its decision must be reversed. This argument ignores the *Strassheim* case, in which the court held that fraud was not necessary to support an award of attorneys' fees. Even in the absence of *Strassheim*, accepting, as we do, the District Court's findings with respect to Matthews' testimony, that testimony amounted to an unconscionable act done with deceptive intent and was a sufficient basis for an award of attorneys' fees. Kearney & Trecker Corp. v. Giddings & Lewis, Inc., 452 F.2d 579, 597 (7th Cir. 1972), cert. denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972).

In reaching that conclusion we need not and do not consider the other matters referred to by the District Court as additional reasons for assessing attorneys' fees.

The judgment of the District Court is reversed insofar as it holds Claim 5 of the Frenzel patent valid and is in other respects affirmed.

Affirmed in part and reversed in part.